**UNITED STATES of America,**
**Appellee,**

v.

**Kirk GAYLE, Ann–Marie Richardson,**
**Defendants,**

**Rohan Ingram, Defendant–Appellant.**

**Docket No. 02–1095.**

United States Court of Appeals,
Second Circuit.

Argued: June 18, 2003.

Decided: Aug. 27, 2003.

Philip L. Weinstein, Legal Aid Society, Federal Defender Division Appeals Bureau, New York, NY, for Defendant–Appellant.

David M. Grable, Assistant United States Attorney (Barbara D. Cottrell, Senior Litigation Counsel, William C. Pericak, Assistant United States Attorney, of counsel), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Albany, NY, for Appellee.

Before: McLAUGHLIN, LEVAL, KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

Before us is a discrete issue of first impression for this Circuit: whether the "convicted in any court" element of the federal statute which prohibits the possession of a firearm by a person convicted in any court of a crime punishable by imprisonment for a term exceeding one year, 18 U.S.C. § 922(g)(1), includes convictions entered in foreign courts. Specifically, we consider whether defendant-appellant Rohan Ingram's 1996 conviction in Canada constitutes a predicate offense under § 922(g)(1). As a matter of statutory interpretation, we conclude that foreign convictions cannot constitute predicate offenses under § 922(g)(1). We find the statutory language to be ambiguous and, upon consulting the statute's legislative history, conclude that Congress did not intend "in any court" to include foreign courts. We therefore reverse the judgment of conviction with respect to the felon-in-possession count and remand for resentencing on the surviving counts.

## BACKGROUND

We recite only those facts relevant to whether Ingram's prior conviction in Canada qualifies as a predicate offense for his felon-in-possession conviction. On February 16, 2001, Ingram was arrested in a Plattsburgh, New York, hotel upon suspicion that he had entered illegally the United States from Canada. Soon after his arrest, authorities discovered a large quantity of firearms stored in boxes in his hotel room.[1] Ingram subsequently was charged in a superseding indictment with conspiracy to export defense articles designated on the United States Munitions List in violation of 18 U.S.C. § 371, 22 U.S.C. § 2778; conspiracy to travel with intent to engage in the illegal acquisition of firearms, in violation of 18 U.S.C. §§ 371, 922(a)(1)(A), 924(n); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

The predicate offense underlying the felon-in-possession count was Ingram's 1996 conviction in Canada for violating § 85(1)(a) of the Canadian Criminal Code for use of a firearm in the commission of an indictable offense. The defense moved to dismiss the felon-in-possession count, maintaining that, because his prior felony conviction did not occur in the United

---

**1.** Per order also filed on this date, we affirm the District Court's ruling not to suppress the firearms evidence.

States, Ingram was not a felon within the meaning of the statute. Acknowledging a circuit split on the issue, the Government argued that Ingram's conviction in Canada constitutes a conviction "in any court" under the terms of § 922(g)(1). After receiving briefing from the parties, the District Court denied Ingram's motion to dismiss. *United States v. Ingram*, 164 F.Supp.2d 310 (N.D.N.Y.2001). Following the reasoning of the Sixth and Fourth Circuits, the District Court concluded that § 922(g)(1)'s "in any court" language unambiguously includes foreign courts. *Id.* at 316–17; *see United States v. Atkins*, 872 F.2d 94, 96 (4th Cir.1989), *cert. denied*, 493 U.S. 836, 110 S.Ct. 116, 107 L.Ed.2d 77 (1989); *United States v. Winson*, 793 F.2d 754, 757–59 (6th Cir.1986). Accordingly, the court held that Ingram's prior Canadian conviction was a proper predicate offense for § 922(g)(1). *Id.*[2]

On October 5, 2001, a jury found Ingram guilty on all three counts. Ingram moved for a judgment of acquittal, which was denied on February 5, 2002. On January 30, 2002, Ingram was sentenced to 78 months' imprisonment, to be followed by a three year term of supervised release, and a special assessment of $300.

## DISCUSSION

The lone issue for us to resolve is whether Ingram's 1996 conviction in a Canadian court can satisfy the element of the statute that requires a conviction "in any court." The federal felon-in-possession statute was enacted as part of the Gun Control Act of 1968, Pub.L. No. 90–618, 82

Stat. 1213 (1968). That statute currently provides, in relevant part,

(g) It shall be unlawful for any person—

(1) who has been *convicted in any court* of, a crime punishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922 (emphasis added). In 1996, Ingram was convicted for violating § 85(1)(a) of the Canadian Criminal Code, which criminalizes the use of a firearm in commission of an indictable offense and carries a maximum imprisonment term of fourteen years. If this conviction were entered by an American court, it would qualify as a predicate offense under § 922(g)(1) because the crime was "punishable by imprisonment for a term exceeding one year." The determinative issue therefore becomes whether the phrase, "convicted in any court," refers solely to convictions by courts in the United States or includes foreign convictions as well. Because a question of statutory interpretation is at issue, we review the District Court's conclusion *de novo. See United States v. Rood*, 281 F.3d 353, 355 (2d Cir. 2002).

Although we have yet to decide this issue, our sister Circuits that have addressed the scope of § 922(g)(1)'s "in any

---

**2.** Ingram also argued below that his Canadian conviction was not a felony within the meaning of § 922(g)(1) because he received a sentence of less than one year. The District Court rejected this argument because what matters, for purposes of § 922(g), is the maximum possible sentence for the offense. *Ingram*, 164 F.Supp.2d at 317. Because the

maximum possible sentence for Ingram's Canadian offense "is a term of imprisonment of fourteen years," the court concluded that this conviction "is, therefore, 'a crime *punishable* by imprisonment for a term exceeding one year.'" *Id.* (quoting 18 U.S.C. § 922(g)(1)). Ingram does not challenge this ruling.

court" language have differed in their interpretation. The Third, Fourth, and Sixth Circuits, along with two district courts, have concluded that "in any court" encompasses foreign courts. *See United States v. Small*, 333 F.3d 425, 427–28 (3d Cir.2003); *Atkins*, 872 F.2d at 96; *Winson*, 793 F.2d at 757–59; *United States v. Jalbert*, 242 F.Supp.2d 44, 47 (D.Me.2003); *United States v. Chant*, Nos. CR 94–1149, CR 94–0185, 1997 WL 231105, at *1–*3 (N.D.Cal. Apr.4, 1997). Conversely, the Tenth Circuit has invoked the rule of lenity to conclude that § 922(g)(1)'s "in any court" language is sufficiently ambiguous that foreign convictions cannot serve as predicate offenses for sentencing enhancements under 18 U.S.C. § 924(e). *See United States v. Concha*, 233 F.3d 1249, 1253–56 (10th Cir.2000).[3]

■ Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well. *United States v. Velastegui*, 199 F.3d 590, 594 (2d Cir.1999) (citations omitted), *cert. denied*, 531 U.S. 823, 121 S.Ct. 67, 148 L.Ed.2d 32 (2000); *see Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981))). Most of the courts that have found "in any court" to include foreign courts have stressed the unambiguously expansive nature of the phrase. *See, e.g., Atkins*, 872 F.2d at 96 ("'Any' is hardly an ambiguous term, being all-inclu-

sive in nature."); *United States v. Small*, 183 F.Supp.2d 755, 760 (W.D.Pa.2002) ("'Any' court means any court and there is nothing in the plain and unambiguous language of Section 922 indicating that Congress intended to exclude foreign convictions from such a broad term."), *aff'd*, 333 F.3d 425 (3d Cir.2003); *Jalbert*, 242 F.Supp.2d at 47 ("The phrase 'any court,' on its face, encompasses foreign as well as domestic courts."). In addition, several courts have interpreted "in any court" as including military courts. *See United States v. Martinez*, 122 F.3d 421, 424 (7th Cir.1997); *United States v. MacDonald*, 992 F.2d 967, 969–70 (9th Cir.1993); *United States v. Lee*, 428 F.2d 917, 920 (6th Cir.1970), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). In reaching this holding, the Seventh Circuit likewise emphasized the broad, all-encompassing nature of the phrase, "in any court":

> Looking to section 922(g)(1), we find nothing that defines or limits the term "court," only a requirement that a conviction have been "in any court" in the course of prohibiting possession of firearms by a felon. Certainly "any court" includes a military court, the adjective "any" expanding the term "court" to include "one or some indiscriminately of whatever kind"; "one that is selected without restriction or limitation of choice"; or "all." Webster's Third New International Dictionary, 1991.

*Martinez*, 122 F.3d at 424.

■ Our textual analysis of what constitutes a predicate offense under

---

**3.** At issue in *Concha* was a sentencing enhancement pursuant to 18 U.S.C. § 924(e) (increasing the sentence for a felon-in-possession conviction if the defendant has three previous convictions for violent felonies or serious drug offenses). Section 924(e) directs the sentencing judge to § 922(g)(1) to determine whether the convictions trigger the en-

hancement. The defendant in *Concha* had four prior felony convictions, three of which occurred outside the United States. Therefore, even though *Concha* did not involve a challenge to a felon-in-possession conviction, the scope of § 922(g)(1)'s "in any court" language was the central issue.

§ 922(g)(1), however, does not end with the words "in any court." "The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir.2003); *see Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir.2002) ("The meaning of a particular section in a statute can be understood in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another."). Congress defined at § 921, the Gun Control Act's general statutory definition section, the sort of crimes that constitute predicate offenses for a § 922(g)(1) conviction:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include-
>
> (A) any *Federal* or *State* offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
>
> (B) any *State* offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

18 U.S.C. § 921(20) (emphasis added). In finding § 922(g)(1) ambiguous, the Tenth Circuit relied heavily on this statutory definition, which it believed would cause a "peculiar result" if "in any court" included foreign courts. *Concha*, 233 F.3d at 1254. As the Tenth Circuit noted, if "in any court" were to include foreign courts, "we would be left with the anomalous situation that fewer domestic crimes would be covered than would be foreign crimes." *Id.* Like the Tenth Circuit, we do not understand the logic whereby a person convicted of an antitrust violation in a foreign coun-

try would not be allowed to possess a firearm, yet a person convicted of the same antitrust violation in the United States would be allowed to possess a firearm. *Id.* At the very least, § 921(a)(20) injects doubt as to whether Congress intended foreign convictions to serve as predicate offenses. *See Marvel Characters Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir.2002) (explaining our reluctance to read a statute in a way that could "lead to anomalous or unreasonable results" (quotation marks omitted)).

Even without reference to the problem resulting from the inclusion of foreign business offenses as predicate offenses, the phrase "in any court" is ambiguous. For instance, it is not unreasonable to understand statutory references to officers, officials, and acts of government as meaning those of the particular government. Just as a state statute authorizing "a police officer" to make an arrest probably means a police officer of that state and does not include police officers from foreign nations, so it is reasonable to read § 922(g)(1)'s reference to convictions as referring to convictions by courts in the United States. On the other hand, there are legitimate reasons why, depending upon the crime, Congress might have wished to include foreign convictions. For example, Congress might well have intended that a violent crime committed abroad such as murder qualify as a predicate offense under § 922(g)(1).

■■■ To resolve this textual ambiguity, we may consult legislative history and other tools of statutory construction to discern Congress's meaning. *See United States v. Nelson*, 277 F.3d 164, 186 (2d Cir.2002), *cert. denied*, 537 U.S. 835, 123 S.Ct. 145, 154 L.Ed.2d 54 (2002).[4] Resort

---

4. We recognize that a regulation published by Bureau of Alcohol, Tobacco, Firearms, and

Explosives ("ATF") defines the statutory provisions as including "[a]ny Federal, State or

to authoritative legislative history may be justified where there is an open question as to the meaning of a word or phrase in a statute, or where a statute is silent on an issue of fundamental importance to its correct application. As a general matter, we may consider reliable legislative history where, as here, the statute is susceptible to divergent understandings and, equally important, where there exists authoritative legislative history that assists in discerning what Congress actually meant. *Cf., e.g., Oklahoma v. New Mexico,* 501 U.S. 221, 235 n. 5, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1991); *Cheung v. United States,* 213 F.3d 82, 92 (2d Cir.2000).

The most enlightening source of legislative history is generally a committee report, particularly a conference committee report, which we have identified as among "the most authoritative and reliable materials of legislative history." *Disabled in Action of Metropolitan New York v. Hammons,* 202 F.3d 110, 124 (2d Cir.2000). In the words of one former legislator and judge, a committee report is "the most useful document in the legislative history." Abner Mikva, quoted in Robert A. Katzmann, "Summary of Proceedings," *in Judges and Legislators* 171 (R. Katzmann, ed.) (1988). Another former legislator and United States Circuit Judge has explained: "[M]y understanding of most of the legislation I voted on was based entirely on my reading of its language and, where necessary, on explanations contained in the accompanying [committee] report." James

L. Buckley, *Statutory Interpretation and the Uses of Legislative History,* Hearing before the Subcommittee on Courts, Intellectual Property, and the Administration of Justice of the House Committee on the Judiciary, 101 Cong.2d Sess., Serial No. 107, at 21 (Apr. 19, 1990).

The Senate Judiciary Committee Report on the Gun Control Act strongly suggests that Congress did not intend foreign convictions to serve as predicate offenses under the felon-in-possession statute. The Senate Report explained the meaning of the term "felony" as follows: "The definition of the term 'felony', as added by the committee is a new provision. It means a Federal crime punishable by a term of imprisonment exceeding 1 year and in the case of State law, an offense determined by the laws of the State to be a felony." S.Rep. No. 90–1501, at 31 (1968). The Senate Report thus unmistakably contemplated felonies, for purposes of the Gun Control Act, to include only convictions in federal and state courts.

Further evidence of Congress's intent to exclude foreign convictions comes from the Conference Report. Next to the statute itself, the most pervasive evidence of congressional intent comes from a conference report "[b]ecause a conference report represents the final statement of terms agreed to by both houses." *Disabled in Action of Metropolitan New York,* 202 F.3d at 124 (quoting *Ry. Labor Executives Ass'n v. ICC,* 735 F.2d 691, 701 (2d Cir.

---

foreign offense for which the maximum penalty, whether or not imposed, is capital punishment or imprisonment in excess of 1 year." 27 C.F.R. § 478.11 (2003). We requested briefing from the parties on the import of this regulation, and both parties agreed that ATF's interpretation of a criminal statute is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), even if the statute were ambiguous.

Moreover, ATF made clear in its explanation that its inclusion of foreign convictions was based solely on the fact that courts have so construed the statute. *See* Commerce in Firearms and Ammunition, 53 Fed.Reg. 10,480, 10,481 (Mar. 31, 1988). But ATF's regulation and the court decisions on which it relied reflected no awareness of the legislative materials discussed below showing that Congress did not intend to include foreign convictions.

1984)); *see Auburn Hous. Auth.*, 277 F.3d at 147. The Conference Report adopted the House version of the bill, which contained the statute's current language, "crime punishable by imprisonment for a term exceeding one year." H.R. Conf. Rep. 90–1956, at 4, 8, 28–29 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4426, 4428. Notably, however, the Conference Report voiced no disagreement with the Senate Report's explicit limitation of felonies to include only convictions attained in domestic courts. Rather, the Conference Report merely chose the phrase, "crime punishable by imprisonment for a term exceeding 1 year," over the word, "felony." [5] Moreover, nowhere did the Conference Report make any mention of foreign convictions serving as predicate offenses.[6]

In sum, two reliable portions of the Gun Control Act's legislative history—the Senate Report and the Conference Report— lead us to conclude that Congress did not intend foreign convictions to serve as a predicate offense for § 922(g)(1). Accordingly, we interpret § 922(g)(1)'s ambiguous "convicted in any court" language as only including convictions attained in domestic courts and not extending to Ingram's Canadian conviction.

We recognize that there are good reasons why Congress might have wanted to include at least certain types of foreign convictions. As this legislation represents a Congressional response to the danger posed by firearms in the hands of convicted felons, *see Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976); S.Rep. No. 90–1501, at 22 (1968); S. Rep. 90–1097, at 19, Congress might reasonably have wished to prohibit firearms possession at least by those convicted in foreign countries of crimes of violence. At the same time, however, had Congress contemplated extending the prohibition to persons having foreign convictions, it would in all likelihood have been troubled by the question whether the prohibition should apply to those convicted by procedures and methods that did not conform to minimum standards of justice and those convicted of crimes that are anathema to our First Amendment freedoms, such as convictions for failure to observe the commands of a mandatory religion or for criticism of government. The complete silence of the statute on such questions further

---

5. The Conference Report provides,
   Definition of crimes.—Both the House bill and the Senate amendment prohibited the shipment, transportation, and receipt of firearms and ammunition by persons under indictment for, or convicted of, certain crimes.... A difference between the House bill and the Senate amendment which recurs in the provisions described above is that the crime referred to in the House bill is one punishable by imprisonment for more than 1 year and the crime referred to in the Senate Amendment is a crime of violence punishable as a felony.
   .... The conference substitute adopts the crime referred to in the House bill (one punishable by imprisonment for more than 1 year) ....
   H.R. Conf. Rep. 90–1956, at 28–29 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4426, 4428.

6. We note that some federal courts considering this question have concluded that the legislative history offered no useful insight into the intended reach of the "in any court" language. *See Atkins*, 872 F.2d at 96 ("[T]he scant legislative history of 18 U.S.C. § 922 ... offer[s] no illumination as to Congress' intended meaning nor serve[s] to inject any uncertainty into the subject language."); *Winson*, 793 F.2d at 757 (concluding that § 922's legislative history does not suggest Congress intended to limit the statute to domestic convictions). It appears, however, that these courts were unaware of the illuminating reports cited above, which to our knowledge have never been cited in a judicial opinion on the question and were not cited in the briefs furnished to us.

contributes to the sense that its meaning is not clear and that it may be appropriate to look beyond its words alone for guidance as to its meaning.

In reaching our decision, we note that Congress may seek to enact gun control legislation that criminalizes firearm possession by individuals with foreign felony convictions. If Congress were to do so, however, it would need to speak more clearly than it has in § 922(g)(1). Today, we only choose not to write into a statute a meaning that seems contrary to what Congress intended.

## CONCLUSION

We have considered all of the defendant-appellant's arguments and, for the reasons stated above, we REVERSE the judgment of conviction with respect to the felon-in-possession count and REMAND for resentencing on the remaining counts.