UNITED STATES of America,

v.

Luciano Antonia DeJESUS–QUEZADA, Defendant.

No. 09 CR 0628(JSR).

United States District Court,
S.D. New York.

Oct. 28, 2009.

Niketh Varadaraj Velamoor, United States Attorney, New York, NY, for United States of America.

Peggy M. Cross, Federal Defenders of New York Inc., New York, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

This Memorandum Order resolves certain disputes between the parties as to the treatment to be given to defendant's prior foreign conviction for sentencing purposes in the instant case. For the following reasons, the Court determines that defendant's foreign conviction qualifies as an "aggravated felony" under 8 U.S.C. § 1326(b)(2), thereby subjecting him to additional statutory penalties and an eight-level offense level enhancement under U.S.S.G. § 2L1.2(b)(1)(C), but does not qualify as a "crime of violence" for the purposes of the sixteen-level enhancement under § 2L1.2(b)(1)(A)(ii).

On July 28, 2009, defendant, an alien, pleaded guilty to illegally reentering the United States subsequent to being deported. 8 U.S.C. § 1326(b)(2) prescribes additional statutory penalties when the prior removal was subsequent to a conviction for commission of an "aggravated felony." Aggravated felony is defined in 8 U.S.C. § 1101(a)(43) to include, *inter alia*, a "crime of violence" under 18 U.S.C. § 16. Under 18 U.S.C. § 16(b), a "crime of violence" is a felony that "by its nature[ ] involves a substantial risk that physical force against the person ... of another may be used in the course of committing the offense."

In the instant case, defendant, after fatally shooting his wife with a pistol, was convicted under Article 295 of the Dominican Penal Code, which states that "[a]ny person who willfully kills another human being is guilty of homicide." Govt. Mem. in Opp. to Def's Presentencing Motion at Ex. B, *United States v. DeJesus–Quezada*, No. 09–CR–628 (S.D.N.Y. Sept. 10, 2009). While shooting one's spouse might seem on its face to be a crime of violence, the Second Circuit requires the Court to take a "categorical approach" to analyzing whether a crime is a crime of violence for the purposes of § 16(b). Under this approach, "the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir.2001) (internal quotation marks and citations omitted).

Even under this approach, however, violation of Article 295 of the Dominican Penal Code describes a crime that by its nature involves a substantial risk that physical force against the person of another may be used in the course of committing the offense. The crime defined by Article 295 is the Dominican Republic's equivalent of what most United States jurisdictions call voluntary manslaughter. More specifically, it is closely analogous to first-degree manslaughter under New York law, which holds a person guilty of first-degree manslaughter if, *inter alia:* "1. [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or 2.[w]ith intent to cause the death of another person, he causes the death of such person ... under circumstances which do not constitute murder...." N.Y. Penal Law § 125.20(1)-(2). The Second Circuit has concluded that first-degree manslaughter under § 125.20(1) or § 125.20(2) is a crime of violence within the meaning of § 16(b). In *Vargas–Sarmiento v. U.S. Department of Justice*, 448 F.3d 159 (2d Cir.2006), the Court stated that "[w]hatever other means a person might conceive to commit first-degree manslaughter, when his intent is to take a life, or at least to inflict serious physical injury—action likely to meet vigorous resistance from a victim—we can confidently conclude that inherent in the nature of the crime is a substantial risk that the perpetrator may intentionally use physical force to achieve his criminal objective." 448 F.3d at 173.

Defense counsel argues that Article 295 is more analogous to second-degree manslaughter, which the Second Circuit has concluded is not a crime of violence under § 16(b). *See Jobson v. Ashcroft*, 326 F.3d 367 (2d Cir.2003). However, the *Vargas–Sarmiento* Court effectively distinguished *Jobson*, noting that "first-degree manslaughter cannot be committed through mere reckless passivity or omission," as could be the case under second-degree manslaughter. 448 F.3d at 172. The same is obviously true for "willful" homicide under Article 295.

Defense counsel also hypothesizes instances in which Article 295 might be violated by passive conduct, such as willfully starving a child to death, *see* tr., 9/22/09, at 8. But the Second Circuit's categorical approach does not require that *all* commissions of the crime require the use of force, but only that there be a substantial risk of force inherent in the crime's nature. Defense counsel's hypotheses, indeed, would also constitute examples of passive violations of New York's first-degree manslaughter restrictions, and yet, as noted, the Second Circuit has already concluded that first-degree manslaughter is, categorically, a crime of violence under § 16(b).

Accordingly, this Court concludes that willful homicide under Article 295 of the Dominican Penal Code is a crime of violence under 18 U.S.C. § 16(b), and thus also an aggravated felony for the purposes of 8 U.S.C. § 1101(a)(43). Defendant's offense level under the Sentencing Guidelines must therefore be increased by eight levels pursuant to U.S.S.G. § 2L1.2(b)(1)(C).

■ Defendant's prior Dominican conviction does not, however, qualify for the sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii), because that provision only relates to crimes of violence committed in violation of domestic laws. Specifically, the commentary to § 2L1.2(b)(1) makes clear that that section only applies to "offenses under federal, state, or local law." U.S.S.G. § 2L1.2(b)(1) cmt. n. 1(B)(iii). This language is in contrast to the definition of "aggravated felony" under § 2L1.2(b)(1)(C), which imports the definition found in 8 U.S.C. § 1101(a)(43) that expressly includes foreign convictions. As the Second Circuit stated in *United States v. Azeem,* 946 F.2d 13 (2d Cir.1991), "Congress has already shown that where it intends to include foreign crimes in sentencing, it will do so." 946 F.2d at 17.

Here, the Sentencing Commission could reasonably have concluded that foreign convictions do not warrant the further additional enhancement provided for domestic crimes of violence under § 2L1.2(b)(1)(A)(ii) because such convictions frequently lack the procedural safeguards typical of U.S. convictions. *Cf. United States v. Gayle,* 342 F.3d 89, 95 (2d Cir.2004). In any event, the plain language of the Guidelines and their commentary is dispositive.

For the foregoing reasons, the Court will add eight points to defendant's offense level calculation under the Sentencing Guidelines pursuant to U.S.S.G. § 2L1.2(b)(1)(C), but not an additional sixteen points pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii).

SO ORDERED.